Stephenson D. Emery, Bar No. 5-2321
Williams, Porter, Day & Neville, P.C.
159 North Wolcott, Suite 400
Casper, WY 82601
(307) 265-0700
(307) 266-2306 Facsimile
semery@wpdn.net

Thomas W. Rumpke, Bar No. 6-2974
Williams, Porter, Day & Neville, P.C.
702 Randall Avenue
Cheyenne, Wyoming 82003
(307) 637-5575
(307) 637-5515 Facsimile
trumpke@wpdn.net

*Attorneys for Masaba, Inc.*

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING
2023 DEC 14  PM 4:07
MARGARET BOTKINS, CLERK
CASPER

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| MASABA, INC., a South Dakota Corporation, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| SOLARIS OILFIELD INFRASTRUCTURE, INC., a Delaware Corporation, | ) Civil Action No. 23CV236-J |
| | ) |
| Defendant. | ) |

## PLAINTIFF MASABA, INC.'S COMPLAINT
### and JURY DEMAND

Masaba, Inc. ("Masaba"), for its Complaint and Jury Demand against Solaris Oilfield Infrastructure, Inc. ("Solaris"), states and alleges:

## NATURE OF THE ACTION

1. This is an action for patent infringement under the patent laws of the United States, title 35 United States Code. Masaba seeks remedies for Solaris's infringement of its U.S. Patent No. 11,780,689 ("the '689 Patent") as outlined below.

## PARTIES

2. Masaba is a South Dakota corporation with its principal place of business in Vermillion, South Dakota.

3. Masaba designs, engineers, manufactures, and sells conveying and material-handling equipment, including custom-engineered systems and solutions.

4. Solaris is a Delaware corporation with its principal place of business in Houston, Texas. Solaris operates a maintenance and storage facility in Casper, Wyoming.

5. Solaris manufactures specialized equipment, which combined with field technician support, last-mile logistics services, and software offerings, enables Solaris to offer oil and natural gas operators and their suppliers efficiencies that reduce operation footprints and costs during the completion phase of well development. Solaris's equipment and services are deployed across active oil and natural gas basins in the United States. Solaris's primary customers are major exploration and production oilfield service companies. Solaris executes master service agreements with its customers to provide specific equipment and services.

## BACKGROUND

**A.  Masaba conceives, designs, engineers, and manufactures a revolutionary top fill silo loading system.**

6. In mid-2020, Masaba was approached by Anchor Technical Equipment, LLC ("Anchor"), of Fort Worth, Texas, to design and build a portable system for Solaris to top fill silos for storing sand used in the hydraulic fracturing (fracking) process.

7. In the summer of 2020, Masaba began working on conceptual ideas for the requested system.

8. In August 2020, an initial concept of a possible system was provided to Solaris. The initial design included a long-inclined belt conveyor ("Beltwall Design") to move the frac sand from the ground to the top of the silos, with a two-piece arm extending from the top of the angled conveyor.

9. Solaris liked the Beltwall Design and began directly communicating with Masaba.

10. Masaba provided an estimated budget of $680,000 +/- 10% for the first system, and Solaris indicated that it was interested in initially purchasing ten systems and many more in the future.

11. Solaris stated that the top fill silo project was the most important project in the company and that it needed the top fill system to gain market share.

12. In November 2020, Solaris instructed Masaba to proceed immediately with the engineering for the system.

13. To accommodate Solaris's expedited and demanding timetable, Masaba gave the project top priority. Masaba pulled engineers from other jobs and assigned them to the project. Masaba also had engineers travel to Texas to meet with Solaris and visit a six-pack silo site.

14. Masaba then spent several months and thousands of manhours researching, developing, designing, and engineering a revolutionary, industry-changing top fill silo loading system.

15. As Masaba worked on the design of the system, Masaba discovered various practical and engineering limitations with the Beltwall Design.

16. In January 2021, Masaba began working on a new, different, and superior design concept. Unlike the Beltwall Design's long-inclined conveyer, the new concept included a substantially vertical bucket elevator in place of the inclined belt conveyor to transport the frac sand to the top of the silos ("Bucket Elevator Design"). The Bucket Elevator Design had multiple engineering and practical advantages over the initial Beltwall Design.

17. In or about late February 2021, Anchor and Solaris agreed to purchase a top fill silo loading system that included the Bucket Elevator Design ("Top Fill System") from Masaba. Masaba sold the system to Anchor, and Anchor resold the system to Solaris.

18. After receiving the order, Masaba continued designing, engineering, and specifying the Top Fill System.

19. In early April 2021, Solaris representatives visited Masaba in Vermillion, South Dakota, to meet Masaba's team and to tour its manufacturing facility.

20. Masaba began manufacturing the Top Fill System in April 2021.

21. As Masaba worked on the Top Fill System, Solaris pushed Masaba to complete the project as soon as possible. Solaris represented that the Top Fill System was critical to its success and that it would ultimately purchase dozens of the systems.

22. In May 2021, Solaris indicated it wanted to order ten additional Top Fill Systems.

23. In early June 2021, Anchor and Solaris personnel visited Masaba again to tour the facility and to review and hasten the progress of the Top Fill System.

24. In mid-June 2021, Anchor ordered a second Top Fill System, with an estimated sale price of $641,659, to be delivered to Solaris. Anchor and Solaris advised Masaba that they wanted Masaba to manufacture and deliver nine or ten Top Fill Systems by the end of the year.

25. On July 21, 2021, Masaba filed a provisional patent application No. 63/223,124, entitled Aggregate Transferring System, for the Top Fill System it had conceived and designed. (*See* Ex. 1.)

26. In late July and early August 2021, Masaba tested the Top Fill System. Solaris representatives attended the testing and were extremely impressed. A Solaris engineer represented that he was not aware of any other company that could have successfully designed such a system, especially in such a short amount of time.

27. After the initial testing, Masaba continued working on and testing the Top Fill System.

28. In October 2021, Masaba delivered the Top Fill System to Anchor and Solaris. The delivered system was marked "PATENT PENDING." (Ex. 2.)

29. With Masaba's assistance, Solaris promptly placed the system into service and reported that operation had been mostly trouble free.

30. Masaba's final sale price for the initial Top Fill System was $570,701. Masaba sold the system at a loss of hundreds of thousands of dollars due to the extensive and unanticipated engineering and design work involved and an increase in steel prices that Masaba did not include in the sale price. Like the exceptional priority Masaba gave to the project, Masaba provided the discount pricing because Solaris repeatedly represented that it would purchase many more Top Fill Systems.

31. As Masaba was completing the first Top Fill System, Masaba began working on a second one.

32. Ultimately, Anchor and Solaris could not reach an agreement regarding the sale price of the second unit, with Solaris inexplicably claiming that the cost to manufacture the Top Fill System was not economically viable.

33. As a result, Masaba terminated its work on the second unit.

**B.     Solaris has infringed and continues to infringe Masaba's patent.**

34. In November 2021, Solaris demanded that Anchor immediately provide a full and complete set of engineering drawings for the Top Fill System, wrongfully claiming that the drawings were Solaris's "valuable intellectual property."

35. At that time, Anchor correctly advised Solaris that Masaba owned all intellectual property related to the Top Fill System and that Masaba had already filed a patent application claiming the Top Fill System.

36. During subsequent conversations, Anchor continued to remind Solaris that Masaba was seeking to patent the Top Fill System.

37. In April 2022, Masaba's legal counsel formally advised Solaris that Masaba had applied for a patent application on the Top Fill System purchased by Solaris. (Ex. 3.) Masaba further informed Solaris that it anticipated obtaining a patent on the system and would protect and enforce its patent rights as necessary. (*Id.*)

38. In response, Solaris misrepresented that it was unaware of Masaba's patent application, (Ex. 4), as the system delivered to Solaris was marked "PATENT PENDING," (Ex. 2), and Anchor had advised Solaris multiple times that Masaba had filed a patent application on the Top Fill System.



FIG. 1A



FIG. 2A

39. On October 10, 2023, Masaba was duly and lawfully issued and assigned U.S. Patent No. 11,780,689 ("the '689 Patent"), entitled Aggregate Transferring System, claiming the

Top Fill System. (Ex. 1.) The '689 Patent includes drawings of an exemplary embodiment of the Top Fill System, (Ex.1 at FIG.1 and FIG. 2A):

40. Knowing that Masaba owned the intellectual property related to the Top Fill System and that Masaba had filed a patent application on the system, Solaris nonetheless decided to copy and manufacture the Top Fill System itself ("Infringing System"). (Ex. 4.) Exemplary materials from Solaris's website about the Infringing System include dimensional drawings that are strikingly similar to those included in the '689 Patent, (Ex. 5):



41. According to Solaris, it currently has thirty-five active Infringing Systems in service in eight states, including Wyoming. https://www.solarisoilfield.com/solutions/top-fill-sand-loading-system  Solaris previously boasted that it had forty-six Infringing Systems in service.

42. The Infringing System, as depicted in attached Exhibit 5 and above, is substantially identical to the one designed, constructed, and patented by Masaba and infringes all but one claim of the '689 Patent. (*Compare* figures in Ex. 1 *with* drawings in Ex. 5.)

43. According to Solaris, the Infringing System provides "a new, faster alternative to sand loading at the wellsite." (Ex. 5.) "With increased payload and faster unloading, the Solaris Top Fill Sand Loading System increases truck utilization, turn rate and supply-chain reliability through multiple trucking options, resulting in lower cost per ton, reduced carbon footprint and higher logistics efficiency." (*Id.*)

44. Just like the Top Fill System designed, tested and patented by Masaba, the Infringing System has a truck offload rate of 400 tons per hour and can unload 54,000 pounds of sand in less than five minutes. (*Id.*)

45. According to Solaris, the Infringing Systems have unloaded 13,000,000 tons (twenty-six *billion* pounds) of sand through September 30, 2023.

46. According to Solaris, the Infringing System has enabled Solaris to work in new basins and for new customers. (Ex. 6.)

## JURISDICTION AND VENUE

47. This action includes a patent-infringement claim arising under the patent laws of the United States, including 35 U.S.C. §§ 271 and 281, and two state-law claims.

48. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1332, and 1338(a).

49. This Court has personal jurisdiction over Solaris, as Solaris operates a maintenance and storage facility in this judicial district; provides continuing and ongoing

services in this district; and has committed and continues to commit acts of infringement in violation of 35 U.S.C. § 271 in this district.

50. Venue is proper in this judicial district under 28 U.S.C. § 1400(b) because Solaris has committed acts of infringement in this district and has a regular and established place of business in this district. According to Solaris's website, at least one Infringing System has been placed into service in Wyoming. Additionally, Solaris operates a repair, warehousing, and equipment storage facility in Casper to support its operations, workforce, and customers in the Rockies region.

## COUNT 1: PATENT INFRINGEMENT

51. Masaba incorporates the allegations in the preceding paragraphs as if fully set forth herein.

52. On October 10, 2023, Masaba was duly and lawfully issued and assigned the '689 Patent claiming the Top Fill System. (Ex. 1.)

53. The '689 Patent consists of twenty-five claims, including independent claims 1, 12, 13, 16, 22, 23, and 25.

54. Solaris has directly infringed the '689 Patent–including claims 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, and 25–by making, using, selling, and/or offering for sale the Infringing System depicted and described in attached Exhibit 5, and is liable for such infringement under 35 U.S.C. § 271(a).

55. Solaris has infringed the '689 Patent–including claims 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, and 25–by actively inducing others to make, use, sell, and/or offer for sale the Infringing System depicted and described in attached Exhibit 5, and is liable for such infringement under 35 U.S.C. § 271(b).

56. Solaris has willfully infringed the '689 Patent with knowledge of the '689 Patent or has been willfully blind to the '689 Patent and the risk of its infringement.

57. Solaris will continue to willfully infringe the '689 Patent unless enjoined from doing so by the Court under 35 U.S.C. § 283.

58. Solaris's acts of infringement have caused damage to Masaba, entitling Masaba to recover damages in an amount to be proven at trial, but in no event less than a reasonable royalty for the use of the patented invention, under 35 U.S.C. § 284.

59. Solaris's acts of infringement are particularly egregious and culpable, in light of Solaris misleading Masaba to believe that it would purchase and continue to purchase additional Top Fill Systems; deliberately copying Masaba's Top Fill System; ignoring communications about Masaba's intellectual-property rights; and feigning ignorance of Masaba's patent application, warranting an award of treble damages under 35 U.S.C. § 284.

60. Considering Solaris's egregious and culpable conduct, Masaba is further entitled to a declaration that this case is an exceptional case and to recover its reasonable attorneys' fees and other litigation expenses under 35 U.S.C. § 285.

## COUNT 2: UNJUST ENRICHMENT

61. Masaba incorporates the allegations in the preceding paragraphs as if fully set forth herein.

62. Solaris repeatedly represented to Anchor and Masaba that if Masaba designed and engineered the Top Fill System, Solaris would purchase at least ten Top Fill Systems and as many as forty to fifty systems.

63. In reliance on these repeated representations by Solaris, Masaba designed and engineered the Top Fill System and manufactured one Top Fill System for Solaris at a significant financial loss for Masaba.

64. Masaba conferred upon Solaris the benefit of its design and engineering work on the Top Fill System.

65. Instead of purchasing additional Top Fill Systems as represented, Solaris decided to copy and exploit Masaba's design and engineering work to manufacture and to place into service multiple Infringing Systems that are substantially identical to the Top Fill System.

66. By copying and utilizing Masaba's design and engineering work to manufacture and operate multiple Infringing Systems, Solaris has unjustly received and exploited the benefit of Masaba's work.

67. Under the facts of this case, it would be inequitable for Solaris to exploit, use, and profit from Masaba's design and engineering work without paying for the benefit of such work.

68. As a result, Masaba is entitled to recover damages from Solaris in an amount to be proven at trial that reflects the value of the benefit unjustly received by Solaris from Masaba.

## COUNT 3: PROMISSORY ESTOPPEL

69. Masaba incorporates the allegations in the preceding paragraphs as if fully set forth herein.

70. Solaris represented to and promised Anchor and Masaba that if Masaba designed and engineered the Top Fill System, Solaris would purchase at least ten Top Fill Systems and as many as forty to fifty systems.

71.     In substantial detrimental, justifiable, and reasonable reliance on these repeated representations and promises made by Solaris, Masaba designed and engineered the Top Fill System and manufactured one Top Fill System for Solaris at a significant economic loss.

72.     Masaba's substantial economic loss was foreseeable to and known by Solaris.

73.     The injustice caused by Masaba's substantial economic loss can be avoided only if the Court enforces the promise to buy at least ten Top Fill Systems.

74.     As a result, Masaba is entitled to recover damages from Solaris in an amount to be proven at trial that reflects the value of the design and engineering work performed by Masaba in developing the Top Fill System, plus any other related damages.

## PRAYER FOR RELIEF

Masaba respectfully prays that the Court enter judgment in its favor and award the following relief against Solaris:

a.     A judgment that Solaris has infringed one or more claims of the '689 Patent and that such infringement was willful;

b.     An award of damages for patent infringement under 35 U.S.C. § 284;

c.     A judgment for a trebling of Masaba's damages recovered under 35 U.S.C. § 284 and/or exemplary damages because of Solaris's willful conduct;

d.     A declaration that this case is an exceptional case and an award of Masaba's reasonable attorneys' fees and other expenses in this litigation under 35 U.S. § 285;

e.     A preliminary and permanent injunction enjoining Solaris from further infringing the '689 Patent under 35 U.S.C. § 283;

f.     An award of damages on Masaba's state-law equitable claims;

  g. An award of prejudgment and post-judgment interest on Masaba's damages;

  h. An award of costs; and

  i. An award of any such other and further relief as the Court deems proper.

## DEMAND FOR JURY TRIAL

Masaba demands a jury trial on all issues so triable.

Dated this 14th of December 2023.

      **PLAINTIFF MASABA, INC.**

      By: /s/ *Stephenson D. Emery*
      Stephenson D. Emery, WSB #5-2321
      Thomas W. Rumpke, WSB #6-2974
      Williams, Porter, Day & Neville, P.C.
      159 North Wolcott, Ste. 400 (82601)
      P.O. Box 10700
      Casper, WY 82602
      T: 307-265-0700
      F: 307-266-2306
      semery@wpdn.net